*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
DALY, GROSS, and de GROOT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Ryan M. HOKO**
Builder Chief Petty Officer (E-7), U.S. Navy
*Appellant*

**No. 202400338**

_____

Decided: 10 December 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
John J. Stephens (arraignment)
Derek D. Butler (motions and trial)
Katherine E. Shovlin (entry of judgment)

Sentence adjudged 29 May 2024 by a general court-martial tried at Region Legal Service Office Naval District Washington, District of Columbia, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: confinement for 21 months and reduction to E-4.[1]

For Appellant:
*Captain Kyle W. Rodewald, USMC*

---

[1] Appellant was credited with 461 days of pretrial confinement credit.

For Appellee:
*Lieutenant Stephanie N. Fisher, JAGC, USN*
*Major Mary Claire Finnen, USMC*

Senior Judge GROSS delivered the opinion of the Court, in which Chief Judge DALY and Judge de GROOT joined.

―――――――――――――

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

―――――――――――――

GROSS, Senior Judge:

A military judge sitting alone convicted Appellant, consistent with his pleas, of one specification of failure to obey a lawful order, one specification of aggravated assault, and two specifications of assault upon a sentry in violation of Articles 92 and 128, Uniform Code of Military Justice (UCMJ).[2] His convictions stem from his unlawful attempt to enter Naval Support Facility Thurmont, which preceded his assault of three Marines assigned to guard the installation. Two of the Marines Appellant assaulted required hospitalization for injuries after Appellant slashed or stabbed them with a knife.

This case is before us on direct appeal pursuant to Article 66(b)(1)(A), UCMJ. Appellant asserts three assignments of error (AOEs) pursuant to *United States v. Grostefon*, one of which merits discussion, none of which merit relief.[3]

―――――――――――――

[2] 10 U.S.C. §§ 892, 928.

[3] 12 M.J. 431 (C.M.A. 1982). Appellant's AEOs are: I. Whether the Government breached the plea agreement by failing to forward Appellant's conditional waiver request to the Chief of Naval Personnel; II. Whether a claim of illegal pretrial punishment under Article 13 or due process can be waived in a plea agreement under [Rule for Courts-Martial] 705(c)(1)(B); and III. Whether the Government subjected Appellant to illegal pretrial punishment in violation of Article 13, UCMJ, and due process. We have fully considered the record and the matters submitted by Appellant in AOE I and find them to be without merit. We therefore decline to grant relief. *United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987). Because we find that Appellant's waiver of his illegal pretrial punishment was valid, knowing, intelligent, and voluntary, we do not reach the merits of AOE III.

## I. BACKGROUND

Appellant was assigned to Naval Support Facility Thurmont, commonly referred to as Camp David. On 2 December 2022, Appellant was driving erratically toward the entrance to the installation. Appellant got out of his car and proceeded to try to enter the compound when Lance Corporal (LCpl) Hotel,[4] who was standing duty as a sentry, told him to stop. Despite LCpl Hotel's order, Appellant continued to walk forward and ultimately engaged in a struggle with LCpl Hotel. During this encounter, Appellant took a fixed blade knife off of LCpl Hotel's body armor. Lance Corporal Hotel tackled Appellant as several other Marines came to help subdue Appellant. During this melee, Appellant stabbed LCpl Mike in the leg and cut LCpl Rogers on the hand with the knife he had taken from LCpl Hotel.

The Marines finally subdued Appellant and he was initially ordered into restriction in lieu of arrest (RILA) under Rule for Courts-Martial (R.C.M.) 304 (a)(2). However, Appellant continued to commit misconduct while on RILA and was subsequently ordered into pretrial confinement at the Naval Consolidated Brig Charleston, Detachment Chesapeake, Virginia. While confined at the brig, Appellant alleged that he was mistreated by the guards and that his medical concerns were downplayed or ignored. He ultimately ended up being admitted to the hospital on Fort Belvoir with a diagnosis of osteomyelitis, an infection in his spine.

Appellant was charged with one specification of violating a lawful order, one specification of wrongful use of a controlled substance, one specification of operating a motor vehicle while under the influence of marijuana, one specification of aggravated assault resulting in substantial bodily harm, two specifications of assault consummated by a battery, and two specifications of assault upon a sentinel in violations of Articles 92, 112a, 113, and 128, UCMJ. After arraignment, Appellant sought release from pretrial confinement on the basis that he had been subjected to unlawful pretrial punishment and cruel and unusual punishment under Article 13 and the Eighth Amendment to the Constitution.[5] The military judge denied Appellant's motion. In Appellant's motion, he stated "The Defense will file another request for confinement credit under Article 13, UCMJ and R.C.M. 305(k) at a later date . . ."[6]

---

[4] All names other than those of Appellant, military judges, and appellate counsel, are pseudonyms.

[5] App. Ex. IX.

[6] App. Ex. IX at 11.

On 6 March 2024, Appellant signed a plea agreement with the convening authority.[7] The plea agreement required Appellant to plead guilty to one specification of violating a lawful order, one specification of aggravated assault, and two specifications of assault upon a sentinel. In return, the convening authority agreed to withdraw and dismiss the remaining charges and specifications. The convening authority and Appellant agreed that the sentence would be limited as follows: (1) no punitive discharge would be adjudged; (2) confinement would be adjudged for a minimum of 18 months and a maximum of 36 months when aggregated; (3) forfeitures would be limited to a maximum of total forfeiture of all pay and allowances for a period of 36 months; (4) no fines would be adjudged; and (5) Appellant could be reduced to paygrade E-1.

Appellant also agreed, as is relevant to this appeal, that he would "waive all waivable motions except those that are non-waivable pursuant to R.C.M. 705(c)(1)(B). This waiver includes all of my previously filed motions in this General Court-Martial, and any motions for confinement credit for the time period when I was placed in [RILA]."[8] At trial, when questioned by the military judge, Appellant said he understood he was waiving any motion under Article 13, UCMJ, and the possible credit he could have received from litigating that motion.[9]

Trial defense counsel informed the military judge that the Defense originated the "waive all waivable motions" provision in the plea agreement.[10] Appellant then told the military judge that his decision to waive his right to raise an Article 13 motion was a knowing, intelligent, and voluntary one.[11]

## II. DISCUSSION

### Appellant's waiver of a motion for unlawful pretrial punishment was valid.

Appellant argues that under R.C.M. 705(c)(1)(B) he could not have been forced to waive his right to raise a motion for credit for illegal pretrial punishment under Article 13. For the reasons set forth below, we disagree.

---

[7] App. Ex. XXXI.

[8] App. Ex. XXXI at 6.

[9] R. at 183-86.

[10] R. at 187.

[11] R. at 187-88.

*1. Law*

Plea agreements in the military justice system are governed by Article 53a, UCMJ, and R.C.M. 705. Article 53a provides limitations on provisions to the extent that the provisions are, as is relevant to this appeal: (1) "prohibited by law;" or (2) "contrary to, or inconsistent with, a regulation prescribed by the President with respect to the terms, conditions, or other aspects of plea agreements."[12] R.C.M. 705 provides, in relevant part, that "A term or condition in a plea agreement shall not be enforced if it deprives the accused of . . . the right to due process."[13]

The Supreme Court held in *Bell v. Wolfish* that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."[14] Our superior court has repeatedly cited to *Bell* in addressing claims of illegal pretrial punishment.[15] In 1989, the Court of Military Appeals stated that the standard under Article 13 "is conceptually the same as those constitutionally required by the Due Process Clause of the Constitution."[16]

The Court of Appeals for the Armed Forces (CAAF) has previously considered the question of whether a pretrial agreement containing a "waive all waivable motions" provision can compel an accused to waive the right to litigate a motion alleging illegal pretrial punishment under Article 13.[17] In finding waiver of the issue, the CAAF stated, "R.C.M. 705(c)(1)(B) does not specifically prohibit an accused from waiving his right to make a motion for sentencing credit because of unlawful pretrial punishment."[18] The CAAF did not discuss *Bell* in *McFadyen* and did not address R.C.M. 705(c)(1)(B)'s prohibition on terms that require an accused to forfeit the right of due process.

---

[12] 10 U.S.C. § 853a(c)(4), (5).

[13] R.C.M. 705(c)(1)(B).

[14] 441 U.S. 520, 535 (1979).

[15] *See e.g. United States v. McCarthy*, 47 M.J. 162, 164 (C.A.A.F. 1997) ("The question whether a pretrial prisoner is suffering unlawful punishment is of both constitutional and statutory concern."); *United States v. Palmiter*, 20 M.J. 90, 98 (C.M.A. 1985) ("Apart from Article 13's proscription, a pretrial detainee is constitutionally protected against 'punishment.'").

[16] *United States v. James*, 28 M.J. 214, 215-16 (C.M.A. 1989).

[17] *United States v. McFadyen* 51 M.J. 289 (C.A.A.F. 1999).

[18] *Id.* at 290.

*2. Analysis*

The question before this Court is not whether Appellant waived his right to litigate his Article 13 motion—he clearly did. Rather, we are asked to determine whether he could be *required* to waive that motion as a condition of his plea agreement with the convening authority. The CAAF has already answered that question affirmatively in *McFadyen*, but Appellant asks us to disregard *McFadyen* on the grounds that it was poorly reasoned and because it cannot be squared with R.C.M. 705's prohibition on plea agreement terms that deprive an accused of due process in light of *Bell*.

We begin by noting that this Court "must strictly follow the decisions handed down by higher courts."[19] As such, even if we were to agree with Appellant that CAAF's decision in *McFadyen* was poorly reasoned, we would be bound to follow or distinguish it.[20] Here, the facts of Appellant's waiver are indistinguishable from those present in *McFadyen* except to the extent that the military judge in Appellant's case took even greater care to discuss with Appellant the impact of the waiver of the right to raise such a motion.

Nor do we believe that there has been a change in the law that would permit a different or more nuanced reading of *McFadyen*. Indeed, the CAAF just last term in *United States v. Suarez* affirmed that a "waive all waivable motions" provision originated by the defense constituted waiver of a previously-litigated motion for adjudicative unlawful command influence.[21] There, the CAAF noted that "[a]n unconditional plea of guilty waives all nonjurisdictional defects at earlier stages of the proceedings."[22] This was despite the CAAF's previous characterization of unlawful command influence as being a violation of due process.[23]

---

[19] *United States v. Andrews*, 77 M.J. 393, 399 (C.A.A.F. 2018) (quoting *United States v. Quick*, 74 M.J. 332, 343 (C.A.A.F. 2015) (Stucky, J., joined by Ohlson, J., dissenting)).

[20] *United States v. Davis*, 76 M.J. 224, 228 n.2 (C.A.A.F. 2017).

[21] *United States v. Suarez*, __ M.J. __, No. 25-0004, 2025 CAAF LEXIS 651, at *14 (C.A.A.F. Aug. 5, 2025).

[22] *Id.* (quoting *United States v. Bradley*, 68 M.J. 279, 281 (C.A.A.F. 2010)).

[23] *United States v. Bergdahl*, 80 M.J. 230, 246 (C.A.A.F. 2020) ("The concept of constitutional due process is rooted in the notion of fundamental fairness, and this Court has long recognized this concern as it pertains to unlawful command influence.").

Admittedly, appellate caselaw has evolved with respect to what is appropriate in a plea agreement.[24] This Court previously considered the impact of the provision of R.C.M. 705(c)(1)(B) prohibiting terms that violate due process and opined that the rule was less than all-encompassing and was focused only on prospective due process violations.[25] This approach makes sense, as nearly every right an accused has, and could therefore waive in a plea agreement, could be said to be grounded in the right to due process. We need not address the full meaning of R.C.M. 705(c)(1)(B)'s prohibition on terms that deprive an accused of the right to due process. All we state here is that a provision requiring an accused to waive his right to seek redress for illegal pretrial punishment under Article 13 is not prohibited.

Finally, although not specifically raised by Appellant, we determine that the provision in Appellant's plea agreement waiving his right to seek redress for alleged illegal pretrial punishment is not contrary to public policy.[26] Here, Appellant proposed a plea agreement in which he received significant protection from punitive exposure and in return agreed to waive his right to litigate whether his treatment in pre-trial confinement violated the prohibition against illegal pretrial punishment. There is no evidence of government overreach in the inclusion of the provision. Appellant was able to make use of the conditions of his confinement and his treatment by the brig staff and medical personnel to argue for a lesser sentence before the military judge. And indeed, the military judge did not sentence Appellant to the maximum confinement under the plea agreement. This provision was valid under binding caselaw and not contrary to public policy. Appellant's motion was therefore waived, and there is no issue left for us to review.[27]

---

[24] *See, e.g.*, *United States v. Cummings*, 17 C.M.A. 376, 380, 38 C.M.R. 174, 178 (C.M.A. 1968) ("We reiterate our belief that pretrial agreements are properly limited to the exchange of a plea of guilty for approval of a stated maximum sentence.").

[25] *United States v. Dawson*, NMCM 96 02394, 1998 CCA LEXIS 45, at *7 (N-M Ct. Crim. App. Jan. 9, 1998) ("this was a retrospective waiver of a violation of her due-process rights, rather than a prospective relinquishment which [R.C.M. 705(c)(1)(B)], apparently prohibits.")

[26] *See United States v. Thomas*, 60 M.J. 521 (C.A.A.F. 2004).

[27] We are dubious of our authority to disregard Appellant's waiver on the basis of the reasoning under *United States v. Chin*, 75 M.J. 220 (C.A.A.F. 2016), in light of the changes to our authority under Article 66, UCMJ. However, even assuming that we retain that authority, we would not do so in this case.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and that no error materially prejudicial to Appellant's substantial rights occurred.[28]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[28] Articles 59 & 66, UCMJ.